This case is 2016-2693, Sabo v. United States. Good morning and may it please the Court. This Court should reverse the trial court's decision awarding attorney's fees in this case for two reasons. First, the fee petition filed by the plaintiffs was untimely. And secondly, the trial court's substantial justification findings contained reversible error. Beginning first with the timeliness question, the Court below entered a decision on December 22, 2011 that approved a settlement agreement that had been reached between the parties. The EJA, the statute at issue here, defines final judgment as a judgment that is final and not appealable and includes an order of settlement. The government's position is that that December 2011 order constituted an order of settlement for purposes of EJA that then triggered that 30-day deadline for filing a timely fee application. At the time that that was entered, had the claims in the case been dismissed at the same time? My understanding is that there were many claims still in the case at the time that the settlement order was approved. And so, you know, our decisions like Silicon Image talk about how, you know, a final judgment requires that the claims actually be dismissed. How do you respond to that? Your Honor, it is correct that the claims themselves were not dismissed because the settlement agreement, what it contemplated and what the settlement agreement that the Court adopted provided for was that there would be dismissal with prejudice of the claims as the particular correction of a particular plaintiff's military records was undertaken. With respect to Silicon Image, as the government has argued in our briefs, we don't believe that that case is controlling. And there are a couple of reasons for that. There is language in that case that does suggest, of course, that dismissal would be required for a final judgment. However, what the Court said in that case, and it was a patent case and not a class action for one, but it said that in the next sentence after the one that the parties of the plaintiffs referred to, it says that dismissal acts as a, quote, full adjudication on the merits. And in our view, there was a full adjudication on the merits with respect to the claims in the settlement agreement that the Court adopted. It was a consent decree in substance because the December 2011 decision that the Court entered, and I'll read from the settlement agreement itself. It said its stated purpose was to, quote, dispose of the claims without any further judicial proceedings, without any trial or adjudication of any issue of the law of fact. And under those circumstances, we are much more in the world of a consent decree where a court has adjudicated all the issues or has adopted a settlement agreement with the parties subject to some enforcement, some implementation matters. And there are cases we cite to an example in 2013 called Slaughter, which was affirmed by the 11th Circuit, where you did have a consent decree that then provided for some future dismissal in the future. We believe that the trial court erred when it said that there was a general rule that required dismissal in order for a settlement agreement to constitute a final judgment. We think this is much more like the consent decrees that the Supreme Court recognized in RUFO or this Court recognized in W.L. Gore, where you have a consent decree that is the equivalent of a final judgment. The EJIS statute itself in the legislative history recognizes that a settlement agreement can constitute a final judgment. We don't think this is any different. Did you have something else you wanted to add? No, Your Honor. I was just going to ask about the legislative history. I mean, it also says that you don't want these deadlines to become a trap for the unwary. And it seems like this is at least a very difficult and close issue. So, you know, I just wonder whether that legislative history undermines your position. It doesn't seem to me that there's a really clear answer here that's in your favor. Well, Your Honor, with respect to trap for the unwary, I'd make a couple of observations. That certainly is part of what was contemplated by Congress here. But the 30-day deadline is also meaningful, and Congress wanted that deadline to establish some finality for purposes of these motions. A deadline from what? It is a question as to when it applies. And we're also talking about a waiver of sovereign immunity, which has to be narrowly construed. But on these facts, there's also not a trap for the unwary. And as we noted in our brief, when the parties presented this settlement agreement, and they were operating under Rule 23 of the Court's Rules as a class action, they filed a motion for preliminary approval. Once the class members were notified in accordance with that procedure, there was a final approval. But when the parties presented that, they specifically said that they would have the plaintiffs reserve their rights because they carved out of the attorney's fees. They couldn't reach agreement on that in the settlement agreement. But they specifically said that the plaintiffs reserved the right to file something within 30 days of the court's approval of the settlement agreement. And we believe that that demonstrates, if anything, that the plaintiffs were aware that there was not some open-ended amount of time that they could file their fee application. We don't believe, and this is sophisticated counsel that was representing these parties, that there was some trap for the unwary that the plaintiffs fell into. In addition to that, when they ultimately filed their fee application, it was some 293 days later. And there was no sort of triggering event to that. And the other important point I would make that I think relates to your question, Judge Stoll, is the trial court found that they were prevailing parties because of the decision that was entered in 2011, the December 2011 decision. And under the Supreme Court's case law that this court has recognized, the Buchanan decision in particular, prevailing party status is established when the court does something that confers or changes the legal relationship between the parties. And the trial court goes on at some length, I think it's at page 28 and 29 of the appendix, in saying why this settlement agreement that was adopted by the court is the functional equivalent of a consent decree in order to reach the conclusion that the plaintiffs were prevailing parties. But what it doesn't do is then follow the logical conclusion of that analysis to say, well, it's also a final judgment. And in our view, that was sort of an irreconcilable inconsistency that the trial court made. Do I understand your view to be that all consent orders are final judgments? No, Your Honor. And I think we've noted in our reply brief, you could have a situation where there's a consent decree that resolves some portion of the claims in a case and maybe reserves others. That's certainly not the case here. And, again, there's language at page 838 of the appendix and 825 in the settlement agreement itself that said that the plaintiffs had expressly agreed to settle, release, waive, and abandon each and all of their claims. So there were no more claims after that settlement agreement was adopted. What the court was doing after the So paragraph 6 of the settlement agreement expressly says, the agreement says, following final approval of the agreement and entry of judgment. So you all drafted the settlement agreement, correct, the government? Your Honor, it was a negotiated settlement agreement. Okay. But you participated in drafting it, the government did. And it has a condition precedent in itself. So while certainly settlement agreements can constitute final judgments for each of purposes, no doubt about that. I don't know that this one does because of the way in which it's drafted and the conditions precedent that it articulates itself. So you're talking about big legal cases, and you're trying to explain to me Devlin or Rabo or all these other cases. But my problem is that you chose particular language in this agreement, and I don't know how to get around that. When I look at that particular language, it leads me to the conclusion that both parties understood this to constitute a final judgment only after there was a dismissal. Your Honor, with respect to that particular language, we don't read that as saying that contemplating some future entry of judgment. There's other language in paragraph 20 which speaks to the court's reservation, retaining of jurisdiction for purposes of enforcement, et cetera, and it's there that there's no mention of entering some sort of future judgment. There was no indication at the time in the contemporaneous papers that suggested that there was going to be some future judgment. So I don't understand. Do I read that out of the agreement? No, Your Honor. I mean, you've made an argument which gives it no meaning in the context it's written in paragraph 6. Well, Your Honor, I think our interpretation of that language would be that the entry of judgment was part of the settlement order itself, the order approving the settlement. No, because the paragraph says, quote, following final approval of the agreement and entry of judgment. So you want me to read out one of the two terms. You have to. I don't see how else I can read the agreement in your favor because you just said, no, entry of judgment really, to us, means final approval of the agreement. But that's expressly contemplated in the sentence as two separate things. Well, Your Honor, I respectfully disagree in the sense that I think that language contemplates that there would be a final approval of the settlement agreement and entry of judgment that could be accomplished in one document, and we believe that that's what happened here when the court adopted the settlement agreement. So you believe that the final approval of the settlement agreement in this case, despite the fact that it doesn't constitute what you and I would normally understand as entry of judgment, right? I mean, there's a typical understanding that you and I, as lawyers, would have for what constitutes entry of judgment. As a judge, I have a particular view of what that usually is. But you think that final approval here constitutes entry of judgment, even though it doesn't say so on its face? Well, Your Honor, yes, we do. And even though the agreement itself delineates them as two different things? Well, again, our interpretation is that it doesn't delineate them necessarily as needing to be accomplished in two different documents. But to the extent that it did require some sort of separate document of entry of judgment, under the court's rules there would have been a 150-day period in which if the court had not entered some separate document called entry of judgment, it still would have been a judgment for purposes of finality. And the plaintiffs have latched onto this November 2016 document as being the final judgment. And there are a couple of problems with that. First of all, that November 2016 judgment never was analyzed by the court, incidentally, because it was entered after the decision that you were reviewing. So the decision that you're reviewing, or really two, but the July 2016 decision with respect to awarding EJ fees came several months before the November judgment. But the November judgment was entered after all of the claims had been dismissed. So as we suggested in our brief, there's a real question as to what validity that particular document had if all of the claims had already been dismissed at that point in time. Plaintiffs also offer no explanation as to why they filed their EJ application in 2012 if the final judgment didn't occur until four years later. Do they need one? I'm sorry? Do they need one? They don't need one. You can always file your EJ application early, right? There's nothing prohibiting that. Well, Your Honor, the Fifth Circuit, I think in particular, has found that an EJ application needs to be filed. It's recognized it can be premature. It is true that a party can file before 30 days. It's not a window, in other words. You can file early. My point is simply that if they filed four years earlier, there's no connection to the final judgment. They would need the final judgment in order to get the EJ fees. So they don't offer an explanation as to why they would do it four years before the EJ fees could possibly become due. In addition, the Kekkonen case and Schaefer, this Court's decision, and Schaefer recognize that there's a distinction between the Court, its jurisdiction over the merits, and its jurisdiction over more of an enforcement stage. We really think that the trial court ignored the way in which this was much more like a consent decree in the sense that they were moving into an enforcement phase. The parties were filing status reports with respect to the particular plaintiffs in the record for multiple years, but really there was not an adjudication on the merits at that particular point in time. If I may, I'm going to turn to the question of substantial justification. You can, but at the expense of your rebuttal time. Well, I'd like to briefly make a couple of points, Your Honor. One is the trial court relied heavily on the so-called pre-litigation phase, and it made a number of mistakes in our view. One is that the trial court relied heavily on its interpretation of 10 U.S.C. 1201 as requiring the Defense Department to apply the VA Schedule 4.129 to PTSD determinations. We think that that was incorrect. The statute says that these disability determinations are to be made, quote, under the standard schedule of rating disabilities in use by the VA. There's no dispute as to that. But 1216 of the statute, 10 U.S.C. 1216, gives the Secretary of Defense rule-making authority and the power to all powers, functions, and duties incident to making these disability determinations. It's pursuant to that authority that the Department of Defense issued this instruction in 1996, which effectively said, we will apply the VA Schedule with respect to disability determinations, but there are aspects of the VA Schedule which we don't believe apply to us. And one of them in particular are convalescent ratings that would be inherently temporary in nature. And that's set forth in its 1996 memorandum that we cite to. It's not as if the Defense Department disavowed the VA Schedule in its entirety. Prior to 2008, the practice was to, based on then-existing law, was to apply 4.130 of the VA Schedule. And 4.130 sets forth a 0% to 100% rating criteria that one could apply to mental disorders, including PTSD. And there are multiple cases in the VA context where VA has applied 4.130. In our brief at pages 1437 and 1437 in the appendix, you'll see that we cite to a number of cases involving the Court of Federal Claims in recognizing the Defense Department's discretion to apply these sorts of rating criteria. And finally, I would just note on substantial justification, Your Honors, that after this case was filed, the parties reasonably attempted to settle it. There was a global resolution in terms of this particular case, but also in July of 2009, the Defense Department decided to retroactively apply 4.129 all the way back to veterans who had been discharged from 2001 onward. And that was on a voluntary basis. So for these reasons, we respect the request that the Court reverse. Thank you. Okay. Mr. Fagg? Thank you, Your Honors. May it please the Court. I will address the timing first. Again, I think at the end of the day, we start and end with the language of statute. The 30 days begins to run when there is a final judgment. In this case, there are dismissals and there is a true final judgment, but the government doesn't want to focus on those. It focuses on the 2011 settlement agreement. For that to have started the clock to have run, you have to ignore the nature of that settlement agreement, which is materially indistinguishable from the agreement that was issued in this Court's case in Silicon Image and the rule of Katelin in the Supreme Court cases and other cases. And there are two aspects to that. One, is there a separate dismissal? Okay, this settlement agreement, you don't look at it and say, is that it? Is the Court done? There's a clear process, things that are going to happen, and there's going to be dismissals and then ultimately a judgment. And secondly, is it conditional? Do things have to happen? Now, in the Silicon Image case, it was a very simple condition. It was a payment by one party to another. Here, it's a lot more complicated, a lot more up in the air, a lot more involvement by the Court, but they are a conditional and there is a dismissal. And this Court held in Silicon Image we would respectfully submit applying well-settled law said that is not a final judgment. And at the end of the day, that's the beginning and the end of the story on the timing issue. Now, the government says three things about Silicon Image. First, they say it doesn't arise from a court-approved consent agreement. Well, sure it did. It was an MOU between the parties that the Court adopted, and it was a closer case than this one because the Court, when it adopted, said this is a final judgment. But the Court didn't look at labels. It looked at what had to happen there. It was a condition, and then there was going to be a dismissal. So that's not a valid distinction. Secondly, the government says it arose from the trial court's enforcement jurisdiction. I confess after all the briefing here, I don't know what that means. Courts clearly have the ability to enforce orders that are not final judgments. A discovery order. Take a deposition in the next 30 days, and if you don't take that, the Court can jump all over the party and make that deposition occur and impose sanctions. Courts enforce orders all the time when those orders are not final judgments. So to say that this Court wasn't letting the parties go, they weren't done yet. Things were going to have to happen. Monthly status reports. I got calls from the judge's clerk. We want to have a status conference. That doesn't happen after there's a final judgment. So this notion and distinction between enforcement and pre- and post-final judgment I think is a fallacy, and it's a fallacy to say that because the Court is implementing or enforcing, that necessarily means there was a final judgment, which is not the case. And then thirdly, the government says, well, Silicon Image wasn't a class action. There is no case anywhere ever that has said there's a different finality rule, a different age of timing rule for class action cases versus individual cases. They cite Devlin, which they didn't cite below. Devlin addressed a very limited set of circumstances, and it involved who can appeal, not when you can appeal. And there it was a non-intervening class member in a 23B1 mandatory class. There's a split in the circuits even to this day over 23B2 and 3, cases where there's an opt-out right. There is no case that I'm aware of that's ever applied Devlin to an opt-in class, which is this type of class unique to the rules of the Court of Federal Claims. So with respect to the timing, again, a couple of other points to make on that is there is no tension, as the government tries to suggest, between the settlement agreement approved by the Court establishing prevailing party status but yet not being the quote-unquote final judgment for the EJIA timing provisions. That happens all the time. It happens, again, examples in the Haitian Refugee Center case in the 11th Circuit, the Gonzales case cited by the government, the legislative history, and the government admits you can file an EJIA petition early. And to dispel one bit of mystery here, why we filed the petition when we did is because we were involved in settlement negotiations with the government,  and we went ahead and filed the motion at that point because we realized the court was going to have to resolve it. So it was never conceived by certainly the plaintiffs or respectfully by the parties that the settlement agreement, when approved by the court, started the 30 days. We addressed that proposal in our brief. I direct the courts to one other point in the appendix. It's Appendix 852, where the language that you mentioned, Judge Moore, following a final approval of settlement and entry of judgment, respectfully, we submit. There's no way to read that as one thing. That's two things, final approval and entry of judgment. That was in the joint motion for final approval. The government signed off on that language. The court adopted that language in its order. So when you look at was this settlement agreement a trigger for EJIA, you look at the language of the statute, it says final judgment. There's nothing that looks like a final judgment here. You look at Hornbook Law, the Moore's Federal Practice Treatise, it says when the dismissals start to occur. Those didn't happen for another year and a half. You look at the case law, what a silicon image says in this court. Silicon image says it's going to be a trigger when the dismissal occurs. And you look at what the court itself said. The court itself said it's final approval and entry of judgment. So when the statute says and includes a settlement agreement, how would you translate that? I would acknowledge that there could be a settlement agreement that would be a final judgment. And, again, that's not a silicon image approved settlement agreement. That's conditional A and that B expressly by its terms refers to other dismissals. So you get it, for example, in the RUFO and WL Gore cases, the institutional litigation cases, where the court enters the consent decree and that's it. And there can be post-judgment enforcement. There can be things happening, but you look at the effect and language and intent of the agreement. And it's not, again, like the silicon image, conditional and doesn't expressly contemplate a separate dismissal. That kind of settlement agreement, sure. And that language is added in 85, again, to make clear that parties don't have to continue to litigate to the bitter end. You can have a settlement agreement that is approved that then can satisfy the EJIA standards. So for all those reasons, unless there's other questions, I'll briefly move to the substantial justification. Three, with respect, important points to note, I think, about the substantial justification. First, the government bears the burden of both pre- and post-litigation substantial justification. Secondly, it's a highly deferential abuse of discretion standard. And third, the determination must be made on the existing record in the civil action under 28 U.S.C. 2412 D1B. Here on the pre-litigation substantial justification, the main argument made by the government, Chevron deference, was not made below. And it wasn't made on the record pending before the proceeding at the time of the civil action. Do you think it even applies? What's that? Do you think it even applies, even if it was an argument that we should consider? Do you think that Chevron deference applies? Is there any ambiguity that would require us to resort to Chevron? No. No. And emphatically, when we address this in our briefs, going back 50 years and this court's case in McHenry from 2004, which long predated the 2008 statute, says crystal clear, the schedule, the veteran's schedule, the VASRD, the Veterans Administration Schedule for Disability Ratings, shall be applied. And, you know, one of proof positive about it not being argued below, so to answer your question, Judge Stoll, we don't think there's ambiguity. But the government never argued the ambiguity below. We lay it out, and I'm trying to articulate it right here, right now, why there's no ambiguity. But this is all being fleshed out before this court on appeal for the very first time. And that's not the way it's supposed to work. If the government's going to seek a reversal, it needs to make the argument to the trial court. It didn't do so here. Turning to the post-justification, post-filing justification, the government has not once but twice effectively conceded our arguments about the lack of substantial justification, namely their failure or refusal to live up to the representations made to the court and to the class about expedited review, the first efforts to try to resolve this, which cost these 2,100-plus veterans two years and many, many, many hundreds and hundreds of hours of counsel time to try to pursue this process that ultimately the representations were not adhered to. We pointed that out emphatically in the motions before the court as the trial court, and Judge Sweeney acknowledged the government didn't respond to that. We emphasized that in our brief here. We called it a threshold motion. And again, the government, who gets the last word here and will have the last word after me, but in its reply brief says nothing about that. They set up a straw man. They say, well, the court couldn't order this anyway, and so remand to the boards was okay and our efforts to do that were okay. That's not what we're attacking. What we say that the lack of post-filing substantial justification consists of is the failure to do whatever it took to live up to those representations, and that, when you're looking at the conduct of the government post-filing, has never been responded or rebutted. So given all of that and given the very deferential abusive discretion standard applied here and the careful and thorough findings of the trial court, we think the substantial justification burden has not been met by the government here. Could you respond to a couple of the government's arguments today? One was I think there are convalescent situations that the DOD has decided gets treated differently, and then maybe another argument that seemed to suggest that maybe 4.129 wasn't always consistently being applied, that maybe there was some back and forth between that and 4.130. So, yes. Let me take the last one first. So 4.130 is a schedule for when you do a medical exam and make determinations, and it sets forth a series of ratings. 4.129 is a subset of that, and it is like a minimum rating. And I direct the court to the DOD document the government relies upon, 1332.39, and paragraph 6.10.2 expressly directs the services to apply minimum ratings. What 4.129 does, and it's that. It's a minimum rating. If you're so severely suffering from PTSD that you can't be a soldier or a sailor or a marine anymore, what the VASRD requires is that you have a 50% disability rating for six months, and then you get a medical exam. And the medical exam will then re-rate you pursuant to 4.130 at whatever your real level is. But the first six months is a minimum rating that both the DOD directive and, again, the case law going back 50 years required the government to assign. So that's 4.129 and 4.130. Then you have convalescent ratings. Convalescent ratings, as the trial court held, there's no mystery about what convalescent ratings are. They have to do invariably with hospitalization. The two that exist here are 4.30 and 4.129. They are on their face called convalescent ratings. And the temporariness that the government latches onto, it doesn't matter. The temporariness, you know, parts of the statutory scheme refer to the TDRL, the Temporary Disabled List. I'm probably mangling the acronym there. But it's a temporary rating. The VASRD is every bit as applicable to temporary separations from service as it is to permanent ones. So, again, minimum ratings like 4.129 is, which the DOD directive required them to apply, are applicable, and that's what this was here. So this kind of winds back around to Judge Stoll to your question. If we were doing a full-blown Chevron analysis here, would there be the requisite ambiguity? No. Or would the government's position conflict with longstanding DOD guidance? Yes, it would. 13.39.39. Would it conflict with the statutes? Yes, it would. Would it conflict with 50 years of case law going back to the Hordacek and McHenry cases? Yes, it would. And, again, so there's nothing in the record that would warrant a different result here. Those are the points that I had to make on the pre and post litigation justification. So I see that I have a little bit of time left, but unless there are further questions by the Court, I will. Okay. Thank you, Mr. Bagg. Thank you. Mr. Canizares, we'll give you two minutes of rebuttal time. Thank you, Your Honors. I want to start with Appendix 852 in the language that Judge Moore, you asked about, that counsel referred to, and read it into the record just to illustrate something, which is it says, following a final approval of settlement agreement order and entry of judgment, the parties will, if necessary, submit briefs regarding the attorney's fees and cost application as indicated above. We believe, as I said before, that that's consistent with our position, but it's also inconsistent with the plaintiff's position here because what they did was they filed an EJF fee application after the 2011, what we're describing as the consent decree, the 2011 order. And now they're arguing that the final judgment didn't occur until 2016. So if they were relying on this particular provision, they didn't comply with it under their own construction of that language. But even if they didn't comply with it, did you raise that argument as a reason that the EJF fee shouldn't be awarded at the time they were awarded below? Your Honor, no. I don't believe we did. So maybe they didn't comply with the section of the thing that you didn't cite to anybody or complain about. What do we do about that? Well, Your Honor, this particular language we don't believe was controlling. The focus of our motion to dismiss for timeliness was focused on the 30-day timeline. It focused on the final resolution of the merits of the case in the settlement agreement. We weren't really focusing on that particular language. We don't believe it really cuts one way or the other. Mr. Fagg referred to that the parties had never conceived that there would be some sort of deadline limitation. We believe that that's refuted by the record, page 848 in particular, where they said that plaintiffs may apply within 30 days of the court granting final approval. There is this distinction that he referred to between enforcement jurisdiction and jurisdiction over the merits. We don't really believe that that's really the key issue in the case. But it is true that in consent decree situations, the court will have a jurisdiction over the merits of the case, and then after a settlement agreement is entered into, it turns into more of an enforcement-type stage. We believe this really follows and tracks that type of procedure that courts have recognized. The legislative history, I just do want to commend the court's attention to. In 1985, when Congress amended EJA, it specifically said in House Report 99-120 that a settlement, if the settlement agreement is reached and the fee award is not part of the settlement, then the 30-day period would commence on the date when the proceeding is dismissed, pursuant to the settlement, or when the adjudicative officer approves the settlement. We believe that sort of refutes the argument that they're making in reliance on the silicon image case in making dismissal the sine qua non of the final judgment. Turning to the suit's- Nope, nope, nope, nope, nope. You are way beyond your time. You used all your rebuttal time the first time despite my warnings. I gave you two minutes. You've taken an extra minute. You're not turning to anything else. Sit down. I apologize, Your Honor. Thank you very much. I thank both counsel for their argument. The case is taken under submission.